This is an application for a preliminary injunction restraining the defendants from engaging in any branch of the barber business at No. 390 Springfield avenue, Summit, New Jersey, or at any other place within one mile of No. 13 Maple street, in said city. The matter was heard on the return of an order to show cause.
The bill and affidavits and answering affidavits show that prior to May 8th, 1922, the defendant Jean Gentile conducted a barber shop at No. 13 Maple avenue, Summit, New Jersey, and on that day sold the barber business, including fixtures and good-will, to one Paula Tally, for the sum of $2,500. The bill of sale by which said business and good-will were transferred by Gentile to Tally, and a copy of which is attached *Page 195 
to the complainant's bill, contained the following covenant:
"The party of the first part hereto hereby agrees that he will not, directly or indirectly, either as employer or employe, engage in any branch of the barber business within a radius of one mile from No. 13 Maple street, Summit, New Jersey, for a period of five years from the date hereof."
Appropriate provisions extending the rights of the vendee to her executors, administrators and assigns, were also included in the bill of sale.
On May 8th, 1924, Paula Tally, the vendee named in the bill of sale, sold said business, fixtures, good-will, c., to the complainant, Victor Dellacorte, who thereupon succeeded to all of the rights of Tally under said bill of sale.
On or about February 24th, 1925, the defendant Jeanne Beauty Shoppe, Incorporated, was incorporated under the laws of the State of New Jersey by Jennie Gentile, the wife of the defendant Jean Gentile, Albino Colalillo and Bernardino Gentile, cousins of the defendant Jean Gentile. Of the authorized capital stock of this company there is issued and outstanding a total of fifty-two shares, of which Mrs. Gentile holds fifty shares and the two cousins one share each.
On or about April 1st, 1925, the defendant corporation opened a beauty parlor, so-called, at No. 390 Springfield avenue, Summit, New Jersey, which is a distance of about two hundred and fifty feet from No. 13 Maple street in said city, and installed the defendant Jean Gentile therein as manager, and has since conducted its business there under the supervision and direction of the defendant Jean Gentile. As part of the business conducted in that establishment, it is alleged that ladies' and children's hair is cut and bobbed. The answering affidavits admit the cutting and bobbing of ladies' hair, but deny the operation as applied to children's hair. The defendants also claim that such cutting and bobbing of hair as is done in the Jeanne Beauty Shoppe is merely a part of the defendants' business of "beauty specialists," and is in no sense a branch of the barber business, and is not in violation of the covenant contained in the bill of sale above recited. *Page 196 
On the other hand, the complainant claims that the cutting and bobbing of ladies' hair is a well-recognized branch of the barber business, and that its practice in the defendants' shop is in violation of said covenant.
At the oral argument on the return of the order to show cause, counsel for defendants cited the Latin root of the word "barber" in support of his argument that the barber business does not include the bobbing of ladies' and children's hair. I then stated, and now repeat, that, in my judgment, recourse to the dead language is not necessary to determine if, in this flapper day and generation, the bobbing of ladies' hair is or is not a branch of the barber business. In my opinion, the bobbing of ladies' hair is a distinct and important part of the business of a modern barber shop, as much as, or more than, was cupping a branch of that business in ancient times. It is not uncommon to-day to see members of the female sex occupying chairs in barber shops having their hair bobbed in an effort to keep pace with the ever-changing styles. This is a common and ordinary occurrence.
My examination of the authorities discloses that the word "barber" is derived from the Latin root "barba," meaning "beard," and the Standard Dictionary defines the word "barber" as "one who makes a business of shaving and trimming the beard, and cutting and dressing the hair." "Barbering" is defined in 7Corp. Jur. (at p. 919) as "the act of one whose occupation is to shape the beard and cut and dress the hair of others." Apparently, the word "others" applies alike to the long-haired male and the bearded female.
But, it is claimed, that the bobbing of hair in a beauty shop is essentially different from such practice when performed in a barber shop and that when so performed in a beauty shop, and it is merely part and parcel of the modern beautifying process as applied to the weaker and lovelier sex; but whether or not this is so, and whether or not the bobbing of hair is really a beautifying process, or contributes, in any degree, to female beauty, is still, in my judgment, an open question. There are still some old-fashioned people who insist that the hair is woman's crowning glory, and that as *Page 197 
Sampson was divested of his strength when shorn of his locks by Delilah, so is woman robbed of much of her beauty when shorn of her crowning glory, irrespective of whether this operation is performed in an ordinary barber shop or in a modern beauty parlor, even though for the word "parlor" is substituted the more modern appellation "shoppe."
Counsel for defendant has furnished me with what purport to be copies of opinions of the courts in some of the western states, to the effect that a beauty shop is not a barber shop, and that hair bobbing is not barbering. All of these cases arose under penal statutes relating to the licensing of barber shops or barbers, and have no application to the instant case. Penal statutes are always strictly construed. My attention has not been called to any New Jersey case which is in point, nor has my examination of the books disclosed any.
But it is not necessary to the disposition of this case that I decide whether or not a hair bobber is necessarily a barber, and I refrain from such decision. What I am called upon to decide is whether or not ladies' hair bobbing is a "branch of the barber business." This I unequivocally hold it to be. Complainant's affidavits show that for at least six years past the bobbing of ladies' hair has been practiced in barber shops in the city of Summit. The covenant in question was made about three years ago, and this branch of the barber business must have been in the minds of the parties when the covenant was entered into.
If it be claimed that the defendant Jean Gentile will suffer loss by reason of being restrained from pursuing this branch of the barber business in his wife's beauty "shoppe," the answer is that when he sold his business, fixtures and goodwill, and covenanted in the bill of sale not to engage in any branch of the barber business within certain territory, he must have had in mind, as a possible consequence, the very situation that has now arisen, and exacted a higher price from his vendee for that reason. This thought is borne out by the fact, as alleged in the complainant's affidavit and not denied by the defendant, that prior to the opening of the Jeanne Beauty Shoppe the defendant Jean Gentile applied to his *Page 198 
vendee and tried to purchase a release from this covenant. It is therefore quite apparent to me that this defendant went into the new business with his eyes open, and has no right to now complain if the successor of his vendee insists upon compliance with the covenant solemnly entered into. Jean Gentile may have sold his birthright for a mess of pottage, but it is not recorded in Holy Writ that the other Esau was permitted to welch on his agreement, and why should Jean?
On the question of balancing equities or conveniences, I think the facts strongly favor the complainant. The defendant Jean Gentile, according to his wife's affidavit, is merely an employe of the corporation defendant, and, if prevented by the enforcement of this covenant from carrying on his trade at 390 Springfield avenue, Summit, New Jersey, may avoid any loss to himself by obtaining employment outside of the restrictive area.
I shall therefore advise a decree restraining the defendant Jean Gentile, also known as Virginio J. Gentile, from directly or indirectly, either as employer or employe, engaging in or conducting any branch of the barber business at 390 Springfield avenue, Summit, New Jersey, or anywhere else within the restricted territory, pending the final hearing in this cause.
It is alleged in the complainant's bill and affidavits that the Jeanne Beauty Shoppe, Incorporated, is really the defendant Jean Gentile, and that the incorporation of the defendant company by the wife and cousins of this defendant is a mere subterfuge to evade the restrictive covenant above referred to. This, while not denied by the defendant Jean Gentile, is denied emphatically by his wife, Jennie Gentile, who alleges that it was her money alone that went into the business, and that business is being conducted for her own private and personal gain. Because there is some doubt in my mind as to what the evidence may ultimately show on this point, the order to show cause will therefore be dismissed as to the defendant Jeanne Beauty Shoppe, Incorporated. *Page 199