[No. 20435. Department Two. February 11, 1927.]

THE STATE OF WASHINGTON, *Appellant*, v. LOIS
LEFTWICH, *Respondent*.[1]

[1] LICENSES (5)—OCCUPATIONS—"BARBERING." Rem. 1923 Sup.
§ 8277-1, defining barbering as "cutting the hair . . . of any
person . . . for hire," embraces the cutting of the hair of a
woman in a beauty shop in the prevailing style of "bobbed
hair."

[2] STATUTES (18)—SUBJECT AND TITLE—"OCCUPATION OF BARBER."
The cutting of the hair of women is included in the title of the
Acts of 1901 and 1923, referring only to the "occupation of
barber."

Appeal from an order of the superior court for
Thurston county, Wilson, J., entered December 9, 1926,
in favor of the defendant, upon sustaining a demurrer
to an information charging a violation of the barbers'
license act. Reversed.

*The Attorney General, L. B. Donley, Assistant,
Roscoe R. Fullerton,* and *Leonard E. Top,* for appellant.

*Vance & Christensen,* for respondent.

PARKER, J.—The defendant, Lois Leftwich, was
charged by information filed in the superior court for
Thurston county with the violation of the provisions
of chapter 75, p. 229, Laws of 1923, known as the
"Barbers License Act." [Rem. 1923 Sup., § 8277-1 *et
seq.*] The language of the title and provisions of the
act to be here particularly noticed is as follows:

"AN ACT relating to the practice of the occupation
of barber, providing for the examination and licensing
of barbers, . . .

"Section 1. Barbering Defined. Shaving the face,
or cutting the hair or beard of any person, either for

[1]Reported in 253 Pac. 448.

hire or reward, shall be construed as practicing the occupation of barber within the meaning of this act.

"Sec. 2. License Required. It shall be unlawful for any person to follow the occupation of barber or practice as a barber in any incorporated town in this state, unless he shall first have obtained a license as provided in this act.

"Sec. 17. Penalties. Any person who shall practice the occupation of barber, barber's apprentice or student in this state, without having obtained a license or permit as provided by this act, or who shall employ a barber or apprentice who has not such license or permit, . . . shall be guilty of a misdemeanor, . . .

"Sec. 18. . . . words importing the masculine gender may be extended to females also." [Rem. 1923 Sup., §§ 8277-1, 8277-2, 8277-17, 8277-18.]

The information, as amplified by an agreed further statement of facts to be considered as embodied therein, was demurred to by counsel for the defendant as not stating facts constituting any offense in violation of the provisions of the act. The trial court sustained the demurrer. Thereupon the prosecuting attorney, in behalf of the state, gave due notice of appeal to this court, as is authorized by § 7, ch. 150, p. 423, Laws of 1925, from the order of the superior court sustaining the demurrer.

The facts alleged in the information, as amplified by the agreed further statement of facts to be considered as embodied therein, may be summarized as follows: On May 17, 1926, the defendant owned and was operating a so-called "beauty parlor" in the city of Olympia, calling her place "The Lois Beauty Shoppe." On that day a young woman entered defendant's shop as a customer for the purpose of having her hair trimmed and having the defendant or her employee perform that service. The young woman had what is known as "bobbed hair;" it having theretofore been trimmed in that style, and she desired it again trimmed in keeping

with that style. By direction of the defendant, her employee, a young woman, performed for the customer the service requested, by trimming her hair and cutting the same with scissors in accordance with the present day style of women's bobbed hair. Upon the completion of such service rendered to the customer, the young woman employee of defendant collected from the customer the sum of fifty cents which she turned over to the defendant. The defendant has for several years past been practicing the business of hairdressing, operating a hairdressing establishment and beauty parlor in the city of Olympia. In the treatment of hair, whether by trimming, cutting or otherwise, she caters only to women customers, the principal part of her business being the dressing of ladies' hair by waving, curling, coloring, etc. On the 17th day of May, 1926, the day of the alleged violation of the act by defendant, she did not have a license issued to her in pursuance of the provisions of ch. 75, Laws of 1923, and on that day her employee who rendered the service here in question did not have any such license.

[1] While the information, as amplified by the further agreed statement, sets forth the facts in considerable detail, our problem, reduced to simple terms, is this: Is the cutting of the hair of a woman so as to produce or keep the hair in the style known as "bobbed hair," such cutting being done for hire in a so-called "beauty parlor" where only women customers are rendered service, "practicing the occupation of barber" within the meaning of this law? The language of section 1 above quoted is so plain, direct and unqualified, to the effect that the "cutting the hair . . . of any person" is "practicing the occupation of barber," that to us there seems no room for interpretation or construction of this statutory language as meaning anything else than the "cutting the hair"

of any man, woman or child. The language is unqualified as to the sex of the person who renders the service, as to the sex of the person for whom the service is rendered, or as to the place where the service is rendered. This is not a question of licensing barber shops or beauty parlors, but is a question of licensing persons "to follow the occupation of barber or practice as a barber." We, are, therefore, not called upon to differentiate between barber shops and beauty parlors.

It is contended in behalf of defendant, and evidently so viewed by the trial judge, that the language of this act, viewed in the light of prior legislation on the subject, should be construed as not including the cutting of women's hair in beauty parlors. In 1901, the legislature passed the original act, entitled "An act to regulate the practicing of barbering, and licensing of persons to carry on such practice." Ch. 172, Laws of 1901, p. 349, Rem. Comp. Stat., §§ 8277-8288, [P. C. §§ 413, 414, 418-427]. That act defined barbering exactly as the act of 1923 here in question defines it, and it may be conceded that the definition in the 1923 act is but a re-enactment of the definition as found in the act of 1901, though the latter act is not amendatory but original in form; covering, however, to a considerable extent, the subject as covered by the act of 1901. The argument seems to be that the cutting or trimming of hair of women was of such rare occurrence in 1901 that the provisions of that act would not have been held as applying to the cutting of women's hair, and that therefore, inasmuch as the definition of barbering in the act of 1923 is but a re-enactment of the definition in the act of 1901, the later act should be construed as if enacted in 1901. It may be assumed that we are safe in taking judicial notice of the fact that in 1901 the general cutting of women's hair in the style of "bobbed hair" was not then common as it has since then become common; but that, to

our minds, does not convincingly argue that the cutting of women's hair in the style of ''bobbed hair,'' or any other style, would not in 1901 have been within the definition of barbering found in the act of 1901. It seems to us that the cutting of women's hair in the style of ''bobbed hair'' would have been just as much ''cutting the hair . . . of any person'' in 1901 as it is today. In any event, when the cutting of women's hair in the style of ''bobbed hair'' became common, we think it became the cutting of hair within the meaning of both the act of 1901 and the act of 1923, requiring a license therefor by the person performing such service.

Our attention has been called to but three decisions of the courts of this country touching in any substantial degree the question here presented. In *Keith v. State Barber Board,* 112 Kan. 834, 212 Pac. 871, the court expressed views seemingly not wholly in harmony with the conclusion we here reach, though the statute there in question regulated the ''occupation of a barber,'' without in terms defining such occupation. In *State v. De Guile,* 160 Minn. 191, 199 N. W. 569, the court viewed the problem somewhat as it was viewed by the Kansas court in the *Keith* case, *supra,* though the Minnesota statute defined the practicing of barbering substantially as it is defined by our acts of 1901 and 1923, and held the Minnesota act not applicable to women employed in beauty parlors who cut or bob women's hair. In *Dellacorte v. Gentile,* 98 N. J. Eq. 194, 129 Atl. 739, vice chancellor Berry, in disposing of the case, it being, however, an injunction and not a criminal case, expressed views somewhat in harmony with the conclusion we here reach. The *Keith* case, decided by the Kansas court, seems distinguishable from our present case, while the *De Guile* case, decided by the Minnesota court, seems not to be distinguishable from our present case, unless there be a difference in the particular prob-

lems because of the above quoted language of § 18 of our act of 1923, to wit: "Words importing the masculine gender may be extended to females also," which do not appear in our act of 1901, and probably not in the Minnesota act. If not so distinguishable, we feel constrained to disagree with the Minnesota court, though with that high degree of respect for its exposition of law which we have always entertained. It seems plain to us that the defining of "practicing the occupation of barber" in the act of 1923 means that the rendering of hair cutting service for hire without a license, as here charged, is in violation thereof.

[2] Some contention is made in behalf of the defendant that because the title of the acts of 1901 and 1923 refers only to the "occupation of barber", the body of the acts should not be held to include the cutting of the hair of women. We do not think the specific defining therein of that occupation goes beyond the fair scope of their titles, so as to warrant our ignoring this statutory definition therein of barbering.

The judgment is reversed, and the cause remanded to the superior court for further proceedings consistent with the views we here express.

MACKINTOSH, C. J., TOLMAN, BRIDGES, and ASKREN, JJ., concur.