EMMA LANE v. STATE OF NEBRASKA.

FILED SEPTEMBER 23, 1930. No. 27515.

*Baldrige, Dorsey & Baldrige,* for plaintiff in error.

*C. A. Sorensen, Attorney General,* and *Homer L. Kyle, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON, EBERLY and DAY, JJ.

EBERLY, J.

The record in this case discloses that Emma Lane, the defendant, was convicted in the district court for Douglas county on a complaint charging that she, "on or about the 31st day of July, A. D. 1929, in the county and state aforesaid, then and there being, did then and there practice barbering without a certificate of registration as a registered barber." Her motion for new trial was overruled, and from the sentence of the court she has appealed.

The material facts are stipulated, and it appears that the defendant for ten years last past has owned a beauty parlor and hair dressing establishment and followed the occupation of a cosmetologist in Omaha, Nebraska; that on the date alleged in the complaint she cut the hair of a young lady, one of the customers of the shop, without first obtaining a license under the barbers' act, as outlined in chapter 154, Laws 1929; that she had applied for and obtained a license under the cosmetologists' law, being chapter 156, Laws 1929, and as such was carrying on the practice of cosmetology on the date alleged in the com-

plaint; that Emma Lane, as well as all other hair dressing and beauty shop proprietors, earns her living by and under the trade and practice of cosmetology, which includes hair dressing and beauty culture, it being usual and customary to cut the hair of women and children as a necessary incident to this art or vocation.

The contentions of the defendant on this appeal are: First, that the part of the so-called barbers' law (chapter 163, Laws 1927, as amended by chapter 154, Laws 1929) compelling cosmetologists and beauty parlor operators to take out a license under the provisions of the barbers' act is unconstitutional and void; second, that there is a conflict between the barbers' law and chapter 156, Laws 1929, and that the latter, as the last legislative word, has superseded the provisions of the former; third, that the so-called barbers' law is unreasonable and goes beyond the realm of the police power of the legislature and therefore void.

The defendant has cited as to the constitutional questions involved the recent decision of *Banghart v. Walsh,* 339 Ill. 132. In this case the supreme court of Illinois, in a well-reasoned opinion construing the terms of the Illinois barbers' act denying beauty culturists the right to cut hair without a barber's license, held these provisions deny due process since the requirement is unreasonable. While the reasoning of the Illinois court is appealing, and the facts then under discussion and those here involved appear quite similar, if not identical, still it is thought the instant case is not to be determined on the principle announced in that case.

"The appellate court will not pronounce a statute unconstitutional and void where a determination of the case does not require that the constitutionality of the statute be determined." *Morse v. City of Omaha,* 67 Neb. 426; *War Finance Corporation v. Thornton,* 118 Neb. 797.

The question fundamentally involved in the present case is whether a cosmetologist, who has in good faith strictly complied with chapter 156, Laws 1929, approved April 23, 1929, entitled "An act to regulate and license practice and

teaching of cosmetology," etc., is required in addition to comply with the provisions of chapter 154, Laws 1929, entitled "An act to amend sections 1, 3, 4, 5, 6, 10, 10B., 16 and 17, chapter 163, Laws of Nebraska 1927, relative to the regulation of barbering," etc., approved April 22, 1929, and is subject to the penalties provided in the latter act for default or failure so to do.

Fundamentally, apart from statutory definition, a cosmetologist is not a barber simply because she may, as a necessary incident of her vocation, cut hair. A carpenter employs a plumb line, square and level, yet the common man would never think of defining the term "carpenter" as including and applicable to all who employ or use the plumb line, square and level in their respective trades.

In the case of *Keith v. State Barber Board*, 112 Kan. 834, the supreme court of Kansas had before it for construction an act entitled as one "creating a board of examiners to examine and license barbers; * * * providing for a license for barbers to practice their trade or calling, and providing punishment for a violation thereof." The first sentence of this Kansas act read: "It shall be unlawful for any person to follow the occupation of a barber in this state unless he shall have first obtained a certificate of registration, as provided in this act." The court said: "It contains no definition of the word 'barber.' It requires an applicant for such a certificate to show among other things that he is free from contagious or infectious disease and that he has the skill to properly perform all the duties of a barber, 'including his ability in shaving, hair-cutting, preparation of tools, and all duties and services incident thereto.' The trial court found upon sufficient evidence that the plaintiff in her beauty parlor shop had been doing all of these different kinds of work which barbers in general do: Cutting hair, massaging the face, clipping hair with barber clippers, singeing the hair, giving tonics, shampooing, manicuring; that these activities were not merely incidental but were important features of the business, coordinating with other parts of it." It was held, however, that "The proprietor of a 'hair-dressing and

beauty parlor,' the important features of whose business include cutting hair, massaging, clipping hair with barber clippers, singeing the hair, giving tonics, shampooing and manicuring, but not shaving the face, is not a barber within the meaning of that word as used in a statute subjecting the followers of that occupation to examination and regulation."

"In this state all public offenses are statutory; no act is criminal unless the legislature has in express terms declared it to be so; and no person can be punished for any act or omission which is not made penal by the plain import of the written law." *State v. De Wolfe,* 67 Neb. 321; *State v. Pielsticker,* 118 Neb. 419.

So, too, in construing or interpreting provisions of criminal law it is to be remembered that if any doubts of the meaning exist in penal laws they ought to be construed in favor of the accused. While in no manner negativing the necessity of reasonable construction, yet as between the government and the individual the benefit of the doubt, all other reasons being equal, ought in these cases to be given to the individual, not to authority; for the state makes the laws and authority has the power. Criminal laws are to be strictly construed, and a penalty must be imposed by clear words.

This penalty the state avers is to be found in provisions of chapter 163, Laws 1927, as amended by chapter 154, Laws 1929, hereafter referred to as the "barbers' act." But the only penalties subject to the limitations above suggested, enforced under the terms of the barbers' act, are to be found in section 9, ch. 154, Laws 1929, and of these the only penalties not necessarily excluded by the nature of the transaction here presented for determination are the following: "17. Each of the following constitutes a misdemeanor, punishable upon conviction by a fine of not less than $5, nor more than $50: 1. The violation of any of the provisions of section 1 of this act."

Section 1 of chapter 154, Laws 1929, reenacted without change the first and second paragraphs of section 1, ch. 163, Laws 1927. The first paragraph, thus continued, pro-

vides: "After January 1, 1928, no person shall practice or attempt to practice barbering without a certificate of registration as a registered barber issued pursuant to the provisions of this act, by the secretary of the state department of public welfare." ' The second paragraph of section 1 referred to related to apprentice barbers. The third, and last, paragraph of section 1 is wholly inapplicable to the facts now before us for consideration. In addition it is also to be noted that section 3, ch. 163, Laws 1927, before the amendment of 1929, expressly provided: "Nothing in this act shall be construed to interfere with the cutting of hair of women and children by lady cosmetologists." And section 9, ch. 163, which was in no manner affected by any of the amendments of 1929 and continues in full force and effect, contains the provision: "Whenever the provisions of this act have been complied with, the department of public welfare shall issue a certificate of registration as a registered barber or as a registered apprentice."

However, among other changes affected by the amendment of 1929 to the barbers' act was the elimination of the words "persons engaged in beauty culture" and all references whatever to "lady cosmetologists" theretofore appearing in section 3 of the act of 1927. In lieu of these, the amendment of 1929 to the barbers' act substituted as persons exempt from its provisions "while in the proper discharge of their professional or occupational duties: * * * 4. Persons engaged in operating or employed in beauty shops or hair-dressing parlors patronized by women and children, except as to the cutting of hair: Provided, however," etc. This enactment, which in form suggests a proviso engrafted on an exception, then proceeded in terms to prohibit any person from following "the occupation of cutting hair or practicing as a hair-cutter" without first complying with the provisions specifically set forth therein, including the prescribed qualifications required, the method and means of determining the same, and the issuing of a "hair-cutter's certificate" which "shall authorize the cutting of hair of persons in beauty shops

and hair-cutting establishments," and the manner in which such certificate shall be renewed annually. It also specifically provided that "any person who shall have been engaged in the cutting of hair in any beauty shop prior to taking effect of this act shall be granted a certificate of registration as a hair-cutter, without examination, by making application to the secretary of the department of public welfare on or before July 1, 1929, and paying the required fee of $3 on applications prepared and furnished by the board of barber examiners."

It is to be noted, however, that section 3 above referred to prescribed within itself no penalty for failure to conform to its requirements, and if penalties exist for such they must be sought elsewhere in the provisions of the barbers' act, as amended. However, the express provisions just referred to, including all portions of the barbers' act, as amended, which are specifically referred to in terms in section 3 aforesaid, fairly disclose a legislative intent that section 3 of the barbers' act, as amended, shall constitute a full, complete and exclusive regulation of all the matters covered therein. We take this to be true, notwithstanding that the form of the enactment under consideration is suggestive of "a proviso engrafted on an exception," because if it be deemed a proviso in form the substance embraced in this enactment causes it fairly to fall within the following rule: "The appropriate office of the proviso is to restrain or modify the enacting clause, and not to enlarge it; but where from the language employed it is apparent that the legislature intended a more comprehensive meaning, it must .be construed to enlarge the scope of the act, or to assume the function of an independent enactment." 36 Cyc. 1162. See *Radil v. Morris & Co.*, 103 Neb. 84.

The natural conclusion follows that the amendment of 1929 to section 3, ch. 163, Laws 1927, which we refer to as the barbers' act, constitutes an independent enactment, exclusive in its nature, for the government and regulation of the subject to which it applies. From this it would follow that neither the "hair-cutter and hair-dresser," which

this section defines and regulates, is a "barber" as defined by the barbers' act; that the occupation regulated is not "barbering;" nor is the certificate issued, which this section directs to be made under the name of "hair-cutter's" "certificate of registration," to be deemed either the legal equivalent of or as a fact "a certificate of registration as a registered barber" referred to in section 1 of the barbers' act, and the issuance of which is provided by section 9 of the same act. The stipulated facts disclose that the transaction upon which this prosecution is based is one properly and wholly within the purview of, governed and controlled by section 3, ch. 163, Laws 1927, as amended. Section 1 of this act, and the penalties provided for violation thereof, being expressly limited by the language employed to "barbering without a certificate of registration as a registered barber," the transaction disclosed by the stipulation is not within the description set forth in the complaint upon which conviction was had in the instant case and the facts involved wholly fail to sustain the same. It is also to be noted that the only penalty provided for the offense charged in the complaint is expressly limited to "violation of any of the provisions of section 1 of this act." The legislature has wholly failed to provide penalties for the violation of the provisions of section 3 of this act, as amended.

In view of the canons of construction heretofore set out, we may not by judicial construction ignore specific limitations or extend the scope of the penalty provided in the barbers' act beyond the express words in which they are prescribed. The conclusion is that there are no penalties provided in chapter 163, Laws 1927, as amended, for the violation of any of the provision of section 3 of the barbers' act. Therefore none can be applied or enforced by the state.

The stipulation also discloses that the defendant has, so far as we are advised, fully complied with the provisions of chapter 156, Laws 1929.

It follows that the stipulated facts wholly fail to sustain the conviction had herein, but disclose affirmatively that the defendant has, so far as we are advised, substantially

complied with all the terms of the controlling enactment. *White v. Blum,* 4 Neb. 555; *State v. Maccuaig,* 8 Neb. 215; *State v. Insurance Co. of North America,* 71 Neb. 320.

The judgment appealed from is accordingly reversed and the cause dismissed.

REVERSED AND DISMISSED.